UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL GUNN, 03-B-2443,

              Plaintiff,

-against-

ANTHONY J. ANNUCCI, Acting Commissioner, et al.,

              Defendants.

**MEMORANDUM OPINION AND ORDER**

20-CV-02004 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Darrell Gunn ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Anthony Annucci ("Annucci"), Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), and Thomas R. Griffin ("Griffin"), Superintendent of Green Haven Correctional Facility ("Green Haven"), for violating his rights under the Constitution. (Doc. 1, "Compl."). Specifically, Plaintiff claims that Annucci and Griffin (collectively, "Defendants") violated his Eighth Amendment rights when, from April 15, 2017 to May 15, 2017, the heat was turned off at Green Haven and he was exposed to "unseasonably lower than average" temperatures. (*Id*. ¶¶ 11-12, 14).

      Defendants filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on December 11, 2020. (Doc. 16; Doc. 19, "Def. Br."). Plaintiff opposed the motion on January 22, 2021 (Doc. 20, "Opp. Br."), and the motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of their motion to dismiss on February 5, 2021 (Doc. 23, "Reply Br.").

      For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

# BACKGROUND

Plaintiff maintains that from April 15, 2017 to May 15, 2017, while incarcerated at Green Haven, he was "expos[ed] . . . to bitter cold temperatures . . . ." (Compl. ¶ 11). During this month-long period in the spring of 2017, Plaintiff claims that "temperatures during the day would reach between 40° and 45° . . . and then even lower overnight—only low 30°s." (*Id*. ¶ 12). Plaintiff asserts that he endured "incredible undue hardships, soft tissue problems, pain and stiffness, depression, anxiety, loss of sleep, and mood swings" (*id*. ¶ 17), and undertook "futile and hopeless attempt[s] to keep warm . . . [by] wear[ing] all his clothing . . . in his cell under the bedding . . . ." (*id*. ¶ 18). As a result of being exposed to the elements, Plaintiff insists that he "cannot live a normal life" or "perform typical daily life activities, i.e. reading, writing, meeting court deadlines, [and] sleeping." (*Id*. ¶ 16).

Plaintiff notes affirmatively that he "used the prisoner grievance procedure available at Green Haven . . . to try and solve the problem." (*Id*. ¶ 22). Plaintiff pled the following regarding the grievance procedure he followed at Green Haven:

> On May 25, 2017 plaintiff DARRELL GUNN, 03-B-2443 presented the facts relating to this complaint. On July 3, 2017 plaintiff was sent a response saying that the grievance had been denied. On August 18, 2017 plaintiff appealed the denial of the grievance # GH-86618-17.

(*Id*. ¶ 22).[1] On these facts, Plaintiff proceeds against Defendants in both their official and individual capacities seeking, *inter alia*, "[c]ompensatory damages in the amount of $250,000 against each defendant, jointly and severally" and "[p]unitive damages in the amount of $500,000 against each defendant." (*Id*. ¶¶ 8, 28-29).

---

[1] Plaintiff references also a grievance filed in May 2016. (*Id*. ¶ 21 (referencing "GH-82882-16")). As that grievance cannot complain about the conditions underlying this proceeding—which occurred a year later—the Court need not and does not consider it.

## STANDARD OF REVIEW

I. <u>Federal Rule of Civil Procedure 12(b)(1)</u>

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent

standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

III. <u>Documents Considered</u>

On a motion under Rule 12(b)(1), "a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Indeed, on such a motion, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," along with "matters of which judicial notice may be taken." *Malloy v. Pompeo*, No. 18-CV-4756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). Similarly, on a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The

Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, No. 20-3084-CV, 2021 WL 1621595, at *1 (2d Cir. Apr. 27, 2021) (internal quotation marks omitted).

Defendants' motion is supported by a declaration, signed by counsel, submitting for the Court's consideration a one-page memorandum, dated September 12, 2017, denying Plaintiff's attempted appeal of his grievance to the Central Office Review Committee ("CORC"). (*See* Doc. 17, Declaration of Julinda Dawkins ("Dawkins Decl."); Doc. 17-1, Dawkins Decl. Ex. A). Plaintiff, in opposition to the motion, submitted papers documenting his compliance with Green Haven's grievance procedure (Opp. Br. at 6-26), along with a January 31, 2021 Decision and Order issued by the New York State Court of Claims which, *inter alia*, denied his request to file a late notice of claim concerning the conditions he experienced at Green Haven from April 2017 to May 2017 (*id.* at 27-35). First, neither Plaintiff nor Defendants have opposed the Court's consideration of any extraneous documents. Second, the Court may consider the documents concerning Plaintiff's exhaustion of administrative remedies because he pled affirmatively that he tried to grieve his exposure to cold temperatures from April 15, 2017 to May 15, 2017 and that he appealed the denial of the grievance—Grievance No. GH-86618-17—on August 18, 2017. (Compl. ¶ 22). Documents associated with that grievance are, therefore, integral to and referenced in the Complaint. *See Thomas v. Goord*, 215 F. App'x 51, 54 n.2 (2d Cir. 2007) (observing that because the plaintiff "specifically references the . . . grievance . . . and indicates that she is making allegations that are contained within that grievance," the grievance could be considered on a

motion to dismiss because its contents were "incorporated by reference"); *Sanchez v. Velez*, No. 08-CV-1519, 2009 WL 2252319, at *1 n.1 (S.D.N.Y. July 24, 2009) ("Because plaintiff's grievances are referenced in the complaint, the grievance documents are incorporated by reference and properly considered on a motion to dismiss."). Likewise, the Court may consider the Court of Claims' Decision and Order because it may take judicial notice of state court decisions. *See Tirse v. Gilbo*, No. 15-CV-987, 2016 WL 4046780, at *14 (N.D.N.Y. July 27, 2016) (explaining that courts may take judicial notice of opinions issued by other courts "to establish the existence of the opinion, not for the truth of the facts asserted" therein (internal quotation marks omitted)).

## ANALYSIS

I. Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to Defendants' arguments regarding the lack of subject-matter jurisdiction and dismissal required under Rule 12(b)(1).

    A. New York Correction Law § 24

Plaintiff does not identify specifically any state law claims for relief aside from referencing generally the existence of such claims. (*See* Compl. ¶ 2 (claiming that the Court has "supplemental jurisdiction over the plaintiff's state law tort claims")). Nevertheless, Defendants argue that to the extent the Court construes the Complaint as seeking relief under New York State law, the Court must dismiss those claims for want of subject-matter jurisdiction. (Def. Br. at 11-12).

New York Correction Law § 24 provides, in pertinent part:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

7

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Corr. Law §§ 24(1)-(2). "The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-7977, 2020 WL 7047697, at *21 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015)); *see also Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law . . . must be dismissed for lack of subject matter jurisdiction."); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (S.D.N.Y. 2014) ("Plaintiff's state law claims against Defendants . . . are barred because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court.").

Plaintiff does not suggest that Defendants acted outside the scope of their employment. (*See generally* Compl.); *see also Cruz*, 24 F. Supp. 3d at 310 (explaining that "[t]he test to determine whether the defendants' actions fall within the scope of their employment is whether the act was done while the servant was doing the master's work no matter how irregularly, or with what disregard of instructions" (internal quotation marks omitted)). As such, because any state law claims against Defendants "would be barred in New York state courts, this Court equally lacks jurisdiction over the claims." *Hassell*, 96 F. Supp. 3d at 385. While this conclusion requires that any claims pressed under New York state law be dismissed, it does not impact the viability of any claims under federal law.[2]

---

[2] Notably, the New York State Court of Claims denied Plaintiff's unopposed motion to serve and file a late notice of claim concerning the facts alleged herein. (*See* Opp. Br. at 27-35).

B. <u>Eleventh Amendment</u>

Insofar as Plaintiff seeks relief under 42 U.S.C. § 1983, Defendants argue that the claims must be dismissed to the extent they seek "damages against Defendants in their official capacities . . . ." (Def. Br. at 11). This argument is based upon the immunity provided under the Eleventh Amendment. (*Id.*).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language has been interpreted to bar suits, even those arising under federal law, against a state by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-7953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Consequently, because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against Defendants in their official capacities. This result does not affect the 42 U.S.C. § 1983 claims against Defendants in their individual capacities; and therefore the Court must consider Defendants' arguments for dismissal under Rule 12(b)(6) as to those claims.

II. Failure to State a Claim Upon Which Relief Can Be Granted

    A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6,

2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Compliance with the PLRA "is an affirmative defense, not a pleading requirement, and therefore a motion to dismiss for failure to exhaust may only be granted if it is clear from the face of the complaint that the plaintiff failed to exhaust" his administrative remedies. *See Gunn v. Beschler*, No. 16-CV-6206, 2020 WL 7398751, at *4 (W.D.N.Y. Dec. 17, 2020). Such clarity exists here.

As an inmate in DOCCS' custody, Plaintiff was required to follow a three-step process to fully and completely exhaust the grievance process. *See generally Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4, 701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(c)(1). Finally, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to CORC within seven calendar days of receiving the superintendent's determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(1)(i).

Plaintiff filed a grievance regarding this incident on May 25, 2017. (Compl. ¶ 22; Opp. Br. at 6 (IGRC "Acknowledgment of Receipt" form), 7-13 (grievance)). Although it is not clear when Plaintiff received the IGRC's response—or what that determination was—he appealed that determination to Griffin, the second step, on June 16, 2017. (Opp. Br. at 14-16). Griffin issued a decision rejecting Plaintiff's appeal on June 29, 2017. (*Id*. at 17). Plaintiff received Griffin's determination on July 3, 2017 (Compl. ¶ 22), and he attempted to appeal Griffin's decision to CORC on August 18, 2017 (*id*. ¶ 22; Opp. Br. at 17, 23-26). On or about September 8, 2017,

Plaintiff sought an extension of time within which to make his appeal to CORC, citing a variety of exigent circumstances. (Opp. Br. at 18-22). On September 12, 2017, Plaintiff's appeal to CORC was rejected as untimely because seventy-five days had passed. (Dawkins Decl. Ex. A). Based upon this information, it is clear on the face of the Complaint that Plaintiff had to take his appeal to CORC by July 10, 2017 (*i.e.*, seven calendar days after receipt). Plaintiff did not meet this deadline and tried to appeal Griffin's decision more than a month later. (Compl. ¶ 22; *see also* Opp. Br. at 17, 23-26).

The remaining claims—those under 42 U.S.C. § 1983 against Defendants in their individual capacities—are consequently dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) in light of Plaintiff's failure to exhaust his administrative remedies under the PLRA.[3]

B. <u>Failure to State a Conditions of Confinement Claim (Eighth Amendment)</u>

Assuming, *arguendo*, that Plaintiff did exhaust his administrative remedies and the two remaining claims could not be dismissed on that basis, the claim would nevertheless be dismissed for its substantive failings. Reading the Complaint liberally, Plaintiff asserts one claim for relief against each Defendant under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language

---

[3] Plaintiff argued, in his opposition to the motion and in conclusory fashion, that he "attempted to exhaust his administrative remedies but was on suicide watch on a hunger strike and was not provided mail, paper, and pen. See attached." (Opp. Br. at 3-4). Upon review of the documents attached to the opposition papers, Plaintiff received medical attention and was housed at Green Haven's infirmary sporadically between July 28, 2017 to September 5, 2017. (*Id*. 18-22). Although there are situations in which an inmate's failure to exhaust administrative remedies may be excused when the remedies are unavailable, *see Thompson v. Booth*, No. 16-CV-03477, 2021 WL 918708, at *7 (S.D.N.Y. Mar. 10, 2021), the events Plaintiff cited occurred almost three weeks *after* the deadline to appeal to CORC expired.

does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). "As such, in each permutation of a claim under that law, a plaintiff must demonstrate: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *5 (S.D.N.Y. Feb. 5, 2021) (internal quotation marks omitted).

Defendants advance a variety of arguments as to why Plaintiff's claims for relief should be dismissed. The Court addresses these arguments *seriatim*.

### 1. <u>Failure to Plead Defendants' Personal Involvement</u>

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor; rather, "supervisory liability requires that the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Novoa*, 2021 WL 431445, at *6 (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *see also Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021). Here, Plaintiff failed to plead facts suggesting Annucci's personal involvement in the alleged constitutional violation, but successfully implicated Griffin.

Annucci's role in this action is limited to the following: (1) he is the Acting Commissioner of DOCCS (Compl. ¶ 5); (2) he "acted pursuant to the policies, regulations or decisions officially adopted or by . . . DOCCS" (*id*. ¶ 9); (3) he, "with deliberate indifference did cut off . . . Green Haven . . . [and] expos[ed] plaintiff to bitter cold" (*id*. ¶ 11); (4) he was "personally involved in subjecting plaintiff to prolonged periods of bitter cold" (*id*. ¶ 15); and (5) "in many ways . . . [he] created an atmosphere of distrust, disrespect, dishonesty, distress, and deceit, perpetuating miserable conditions . . . ." (*id*. ¶ 19). None of these facts, together or separately, allege plausibly that Annucci was personally involved in the subject conduct. The first two allegations involve Annucci based on his position in the DOCCS hierarchy; this is insufficient to establish personal involvement. *See Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) (explaining that "a mere 'linkage' to the unlawful conduct through the 'chain of command' . . . is insufficient to show . . . personal involvement . . . ."). The three remaining allegations are conclusory and totally devoid of any facts suggesting plausibly that Annucci was involved in turning the heat off at Green Haven. *See Murphy v. Spaulding*, No. 20-CV-9013, 2020 WL 7248855, at *3 (S.D.N.Y. Dec. 7, 2020) (claiming that the warden created an "atmosphere" permitting a violation to occur was insufficient to allege personal involvement); *Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) (noting that the plaintiff "offer[ed] no factual allegations suggesting that Annucci was present for, knew of, or even had any reason to know about the alleged" constitutional violation); *Ford v. Aramark*, No. 18-CV-2696, 2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official where "the Complaint lack[ed] any *non-conclusory* allegation" about that official's personal involvement (emphasis in original)). As Plaintiff has not alleged facts suggesting plausibly Annucci's personal involvement, the claim against Annucci must be dismissed.

Unlike Annucci, Plaintiff presented successfully facts suggesting plausibly that Griffin was involved in the purported constitutional violation. Although Plaintiff pled that Griffin was involved in the very same way as Annucci (*see* Compl. ¶¶ 6, 9, 11, 15, 19), in opposing Defendants' motion to dismiss, he produced a variety of documents connected to the internal grievances he filed. Among those documents is a single page, dated June 29, 2017, entitled "HEAT TURNED OFF TOO EARLY." (Opp. Br. at 17). The body of that document reads:

> The grievant complains that the heat was turned off too early.
>
> According to the investigation, the heat was turned off on 4/27/17, at the Superintendent's discretion.

(*Id.*). Defendants ignore this document in their reply brief. (*See generally* Reply Br.). However, on a motion to dismiss, the Court may consider properly "documents that a pro se litigant attaches to his opposition papers." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, because this document allows the Court to infer plausibly that Griffin directed that the heat be turned off, Plaintiff pled that Griffin was personally involved in the alleged constitutional violation.

2. Failure to Plead the Elements of the Claim for Relief

The Eighth Amendment[4] instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide

---

[4] Plaintiff's claim is governed by the Eighth Amendment because he is a convicted prisoner. First, Plaintiff pled affirmatively that he was a "state prisoner" and invokes his rights under the Eighth Amendment. (*See* Compl. ¶¶ Prelim. Stmt., 4, 24). Second, Plaintiff provided his Department Identification Number or "DIN." (*Id.* ¶ 4). Searching Plaintiff's DIN (03-B-2443) on the DOCCS inmate lookup website, Plaintiff was convicted of Murder in the First Degree and Attempted Murder in the First Degree, was received by DOCCS in October 2003, and is serving a term of life imprisonment. *See Simmonds v. Family Dollar Store*, No. 18-CV-1241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information."); *Jackson v. Sullivan Cty.*, No. 16-CV-3673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018).

humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to state a claim for relief where, as here, relief is based on a theory that "the conditions of . . . confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Under the first step of the analysis, conditions of confinement are objectively serious if the plaintiff can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This assessment is not "static," as "[t]he conditions themselves must be evaluated in light of contemporary standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995). At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was "deprived of [his] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" or was "exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks omitted). As for the second step of the analysis, the subjective element, a defendant:

> cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (quoting *Farmer*, 511 U.S. at 837); *see also Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir. 2019) (noting that a plaintiff "must demonstrate that, subjectively, prison staff acted with deliberate indifference . . . in failing to address the purported danger" (internal quotation marks omitted)).

It is well-established in the Second Circuit that an inmate may state a conditions of confinement claim under the Eighth Amendment as a result of exposure to excessive cold. *See, e.g.*, *Wenderlich*, 779 F. App'x at 56 ("We have held that inmates' prolonged exposure to subzero temperatures violates the Eighth Amendment."); *Brown v. New York*, No. 20-CV-6042, 2020 WL 3630388, at *5 (W.D.N.Y. June 26, 2020) ("An Eighth Amendment claim may be established by proof that the inmate was subjected to a prolonged period of bitter cold." (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001))); *Henry v. Doe*, No. 19-CV-10153, 2020 WL 209091, at *6 (S.D.N.Y. Jan. 10, 2020) ("A prisoner may successfully state a claim of deliberate indifference if he alleges that he was exposed to extreme cold for long periods of time."); *Collins v. Fischer*, No. 15-CV-103, 2018 WL 1626528, at *6 (S.D.N.Y. Mar. 30, 2018) ("Various courts, including the Second Circuit, have held that excessively hot or cold temperatures may qualify as a constitutional violation."). However, while "[d]istrict courts in the Second Circuit have . . . found allegations of exposure to uncomfortable temperatures for short periods of time insufficient to state an Eighth Amendment claim," *Collins*, 2018 WL 1626528, at *7 (collecting cases), "[c]ases where plaintiffs have succeeded . . . involve allegations of exposure to freezing or near-freezing temperatures for a more prolonged period of time than eleven hours." *Ford*, 2020 WL 377882, at *7 (quoting *Brims v. Ramapo Police Dep't*, No. 11-CV-712, 2011 WL 7101233, at *5 (S.D.N.Y. Dec. 23, 2011)).

Here, Plaintiff's claim is that it was a constitutional violation for him to be exposed to "bitter cold temperatures" which fell "between 40° and 45°" during the day and the "low 30°s" at night during one "unseasonably" cold month during the spring of 2017. (Compl. ¶¶ 11-12, 14). These allegations are conclusory and wholly insufficient to meet the objective element of the analysis. Plaintiff states neither when, specifically, he was exposed to the frigid temperatures, the

length of any period of exposure, nor whether these temperatures were readings from inside or outside the facility. (*See generally id*.). The fact that these details are unstated prevents the Court from concluding that Plaintiff pled plausibly that he was objectively exposed to conditions posing a risk to his health. *See Collins*, 2018 WL 1626528, at *7 (dismissing plaintiff's claim because he did not allege "how cold the temperature in the cell actually was" or "how long he was exposed to the 'very cold' temperature"); *see also Lopez v. Phipps*, No. 18-CV-3605, 2019 WL 2504097, at *8 (E.D.N.Y. June 17, 2019) (dismissing pretrial detainee's conditions of confinement claim for failure to plead facts supporting the objective prong where he pled that "on a particular evening, he experienced freezing temperatures, but [did] not plead the length of his confinement or how these conditions affected his health"); *cf. Wingate v. Robert N. Davoren Ctr.*, No. 12-CV-5521, 2013 WL 4856573, at *3 (S.D.N.Y. Sept. 10, 2013) (denying motion to dismiss plaintiff's claim based on excessive heat where he pled that "he was exposed to '90 plus degree [temperatures] everyday' for seven days" (alteration in original)). In short, the claim must be dismissed because the failure to provide specific facts as to the objective prong has prevented Plaintiff from pushing his claim "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

However, even if Plaintiff pled facts sufficient to state the objective element of this claim, it would nevertheless be dismissed in light of Plaintiff's failure to plead Griffin's deliberate indifference. While Griffin may have directed that the heat be turned off, there is no allegation that Griffin was actually aware that Plaintiff—or any other inmate—was exposed to freezing temperatures at any point during the spring of 2017. *See Brown*, 2020 WL 3630388, at *5 (concluding that, even if the plaintiff "met the objective prong," he offered no facts establishing that any defendant knew about the cold conditions).

Plaintiff's conditions of confinement claim is, therefore, dismissed under Rule 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In this case, the Complaint is dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 16, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.[5]

**SO ORDERED:**

Dated: White Plains, New York
April 29, 2021

PHILIP M. HALPERN
United States District Judge

---

[5] Given the conclusions reached herein, the Court need not and does not address Defendants' remaining argument as to qualified immunity.